**STATE of Missouri,
Plaintiff-Respondent,**

**v.**

**Willie Norman STEVENSON,
Defendant-Appellant.**

**No. 39405.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 4, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 15, 1979.

Application to Transfer Denied
Dec. 6, 1979.

Robert C. Babione, Public Defender, Mary Louise Moran, Asst. Public Defender, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Kristie Green, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Dean R. Hoag, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Judge.

A jury found defendant guilty of illegal possession of a Schedule I Controlled Substance—Heroin. The court entered judgment upon the verdict and assessed punishment under the Second Offender Act § 556.280. We affirm.

Defendant's contentions in general terms are that the court erred in 1) denying his motion to suppress evidence; 2) denying his motion for acquittal because the State failed in its proof; 3) failing to discharge him because he had been twice placed in jeopardy; and 4) failing to dismiss the information.

We first consider defendant's charge that the trial court erred in denying his "Motions for Judgment of Acquittal because the prosecution failed to meet its burden of proving that [defendant] himself had knowingly possessed heroin in that the prosecution failed to demonstrate exclusive possession on the part of [defendant]."

In considering this issue we view the evidence in the light most favorable to the State and give it the benefit of all favorable inferences. *State v. Wiley*, 522 S.W.2d 281, 292 (Mo.1975). We review the facts relevant to this issue. The facts necessary to other issues will be stated when those issues are considered.

On May 13, 1976 at about 4:30 PM police officers executed a search warrant to search a two story single family brick residence at 5233 Raymond in the City of St. Louis for heroin. Officer Morgan knocked on the door at the above address. A son of defendant approached the door from the inside and when Officer Morgan held up his badge the young man ran up a flight of stairs. The officers forced the door. Two of them followed defendant's son to the bathroom on the second floor where they found him flushing the toilet. Other officers ran up a flight of stairs leading to a loft or attic area above the second floor to secure the building. They saw defendant, Carolyn Hoskins, his "common-law wife" and their baby lying on a mattress asleep. One of the officers woke defendant, read

the search warrant to him and gave him a copy. Officer Stolte searched the room. There was a dresser about four feet from defendant. From the top of the dresser he seized a wire strainer and a wire sifter, several cooker caps, 14 hypodermic syringes, 5 measuring spoons, and an envelope of empty gelatin capsules, a brown plastic vial containing 17 pink capsules of heroin and a 1973 wage and tax receipt from Jaeckes-Evans Manufacturing Company bearing the name W. Stevenson and the address 5233 Raymond.

Defendant was placed under arrest and read his *Miranda* rights. Defendant then told the officer that the 17 capsules of heroin were all they would find in the house. Defendant also said, "Damn, you have got me good. If I hadn't been sleeping, I could have flushed the [capsules] before you got up to my room." There was a discussion with respect to arresting Mrs. Hoskins and at that time defendant told the police, that there was no need to arrest her because she didn't live there and none of the heroin was hers, that it was his for his personal use. He told the police that Mrs. Hoskins had been an addict but that she was in a rehabilitation program.

Mrs. Hoskins appeared as a witness on behalf of defendant. She testified that she was defendant's common-law wife and that she resided at 5233 Raymond on May 13, 1976, a house owned by defendant's mother, Willie Stevenson Perkins. She said that she paid $60.00 per month for the room. Although it appears to be a single family house it is occupied by eight to ten persons. She had told the police that she lived at 4921 Penrose but that is the address of her mother. She stated that defendant lived at 4215 Shreve on May 13, 1976 and had come by 5233 Raymond that day about 10:00 AM to visit her. She stated that defendant's sons Stanley and Randy and his nephew also use the room.

She also testified that defendant did not bring the heroin and paraphernalia into the room and she did not know that they were in the room until they were seized; that they did not belong to defendant; that de-fendant said they belonged to him because he was protecting her.

■ While we believe there is sufficient evidence to warrant a finding that defendant was in control of the premises at 5233 Raymond, we do not have to make that determination to conclude that the defendant was knowingly in possession of heroin. Defendant was present in the room where the heroin was found. Mrs. Hoskins disclaimed any knowledge of the presence of heroin. The defendant admitted that it was his for his personal use. There was ample evidence from which the jury could find defendant guilty of the crime charged. *State v. Wiley, supra.*

We consider next defendant's contention that the court erred in denying his motion to suppress evidence and admitting into evidence items seized in the execution of the warrant in the loft or attic because the search and seizure were beyond the scope of the warrant to search "a single family two story brick constructed residence at 5233 Raymond" in that the warrant confined the search to the first two floors of the building.

Defendant relies on *State v. Barrelli*, 317 Mo. 461, 296 S.W. 413 (1927). There the warrant described the premises to be searched as:

> "A two-story brick building, the basement beneath the same and all structures, barns, sheds, garages, outhouses in the rear of the same, and all buildings located in and upon the premises at 315 Cherry Street, Kansas City, Missouri."

The principal structures at that address consisted of a two story building. Defendant rented the first floor as a soft drink parlor. The landlord lived upstairs. There was another building occupied by another tenant and a shed on the premises. As we read the case the court held that where there is a description by street and number and the premises are occupied by a number of persons for different purposes each having the right to exclusive possession of separate portions of the premises whether as owners or tenants, the description in the

warrant is not a particular description as required by the Constitution because it does not discriminate between the various owners or tenants.

 This is not the issue presented to the court by defendant's point relied on. Defendant argues that the house was a multi-unit structure, however, issues not raised in the point relied on may not be raised in the argument portion of the brief. V.A.M.R. Civil Rule, Rule 84.04(d, e), *State v. Flynn*, 541 S.W.2d 344 (Mo.App.1976). In the hearing on the motion to suppress defendant testified that he had lived at 5233 Raymond for twenty years but presented no evidence that there were multi-units in the premises. On a motion to suppress evidence seized under a warrant the burden of proof is upon the defendant. *State v. Randall*, 540 S.W.2d 156 (Mo.App.1976). There is a complete lack of evidence to support such a contention.

 The issue presented is whether the description in the warrant was intended to exclude the search of the loft or attic area of the premises. § 542.276.6(5) requires that a search warrant " . . . identify the person, place or thing [to be searched] . . . in sufficient detail and particularity that the officer executing the warrant can readily ascertain whom or what he is to search." The warrant commanded the officers to search "the two-story, single family, brick constructed residence located at 5233 Raymond Avenue." The photographs introduced show a building with a single front door, two stories and what appears to be a loft or attic area with a window unit in the center of the attic under the eaves. The window unit consists of two adjacent windows. The building is what one would commonly refer to as a two story single family residence.

The language of the warrant restricted the search to the building described but is not restrictive as to the areas of the building to be searched. We hold that the search of the attic was within the scope of the warrant. The trial court did not err in overruling defendant's motion to suppress.

Defendant also contends that the court erred in denying defendant's motion to suppress and in permitting the State to introduce the Wage and Tax Statement on the ground that the search was invalid and for the further reason that it was not described in the warrant and was not sufficiently connected to the res gestae of the act of possession of the controlled substance.

What we have said with respect to the validity of the search above is equally applicable to this item of evidence.

With respect to the other issues in this point defendant contends that prior to the first trial of this case that ended in a mistrial he was unaware that the State had the Wage and Tax Statement. It was for that reason this item was not included in his motion to suppress. He further states in his brief that he offered a second motion to suppress which included among other items the Wage and Tax Statement. We have reviewed the proffered motion but find no reference to the Wage and Tax Statement.[1]

 If the defendant desires to attack the validity of a search and the admissibility of the fruits of the search he must file a motion to suppress that evidence and keep the question alive by timely and proper objections throughout the trial and by bringing it to the attention of the trial court in the motion for new trial. *State v.*

---

1. After alleging the issuance and execution of the warrant the motion states: "4. Heroin and apparent drug-related paraphernalia were seized in the course of this arrest.

*Defendant states that the warrant issued in this case was void because:*

1. The affidavits upon which it was issued stated mere conclusion; (sic)

2. The informant's statement was uncorroborated by the independent investigation of the police officers;

3. The information furnished to the Judge was incompetent to provide him the independent basis upon which he could issue the warrant. .

WHEREFORE, defendant asks that the evidence, particularly the physical evidence merely collateral to the issue of possession of heroin, that was seized as a result of this unlawful search and seizure be suppressed. (LODGED, May 11, 1977)"

*Fields,* 442 S.W.2d 30 (Mo.1969). In the case before us defendant does not contend that he had no reason to anticipate the evidence would be introduced and was surprised. He did not file a motion to suppress the evidence of the Wage and Tax Statement. The issue has not been preserved for our review. *State v. Fields, supra.* We also note that the objections made to the evidence at the trial are not those made in the motion for new trial. Nor are the issues sought to be presented to us the same as those made at the trial or those set forth in the motion for new trial. The point raised upon appeal must be based upon the theory of the objection as made at the trial and as preserved in the motion for new trial. *State v. Swinney,* 558 S.W.2d 363 (Mo.App.1977). Aside from the general validity of the search the point relied upon preserved nothing for review. Nevertheless we believe that the Wage and Tax Statement was properly introduced into evidence. It was relevant in anticipation of Mrs. Hoskins testimony that defendant did not live at 5233 Raymond Avenue. See also *State v. McCurry,* 582 S.W.2d 733 (Mo.App. 1979).

Defendant contends that the court erred in overruling his motion to dismiss the information and discharge the defendant because he was twice placed in jeopardy in that a prior trial in this cause had proceeded into the defendant's case when a mistrial was declared by the trial court.

In that trial defendant's counsel had requested a recess to get a witness that she assured the court was available. After the recess counsel advised the court the witness was unavailable; that she had spoken to the witness who advised counsel that she would not be available to the defense. Counsel then announced that she would call Carolyn Hoskins as a witness. She had previously advised the State that she would not call Carolyn Hoskins as a witness. When the State was advised that defendant intended to call the witness the State claimed surprise. The State asked an opportunity to voir dire the witness before it could determine what remedy it would request. After considerable colloquy between the court and counsel both on and off the record the State announced it "would like to make a motion claiming surprise in the defense calling Carolyn Hoskins . . .." The State asked no specific relief. Ultimately the court made the following comments and rulings:

"The Court feels that the position of the State is reasonable, well taken, under the circumstances that have arisen here, and unintentionally the State has been placed in a most disadvantageous position of facing a witness about whom it has been indicated previously that would not be called to testify in this case about a very relevant and material matter in the case. One of the sanctions that the discovery rules permit is to refuse to permit a witness to testify. It's an extreme measure to take. I don't feel that I should, under the circumstances, take that position and impose that sanction. At the same time I think the State has been put in a position of disadvantage, and we won't, considering that this lay witness who is probably not an educated person, who has been a narcotics addict, and her rights would not only have to be explained to her by disinterested counsel, she would have a right to an attorney inasmuch as she could very well wind up being charged with a felony crime as a result of the testimony she might give. That's the position of the Court, then, that I have no choice but to declare a mistrial at this time and to discharge the jury."

Although the issue was brought to the court's attention by the State it made no specific request for a mistrial. It is contended by defendant that the mistrial was declared by the court on its own motion. Whether the action was taken by the court sua sponte or at the request of the State is not material to the issue because of the conclusion that we reach on this issue.

■ The applicable principles are definitively reviewed in *State v. Irving,* 559 S.W.2d 301, 306 et seq. (Mo.App.1977). The double jeopardy provision of the Fifth

Amendment to the United States Constitution [2] is applicable to the states. A person is placed in jeopardy in a jury trial when upon a valid information or indictment the jury has been impaneled and sworn. The double jeopardy provision does not result in every instance in which a mistrial is declared after the impaneled jury has been sworn. As said at page 308 of *Irving*:

"The trial court, vested with discretion, has the authority to discharge a jury from giving any verdict when, under all the circumstances, there is a 'manifest necessity' to abort the trial, so that the defendant may be retried without violating the Double Jeopardy prohibitory rule. In this regard the courts have not laid down an inflexible, rigid test as to when trials may be discontinued by a trial court sua sponte so that the constitutional prohibition is applicable to a subsequent trial. A mechanical rule has never been applied nor can one be devised."

An oft repeated test is set forth in *United States v. Perez*, 22 U.S. 559, 580 (9 Wheat); 6 L.Ed. 165 (1824):

"The law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."

The solution of the issue in any given case is dependent upon the particular facts of the case. In the case before us defendant did not comply with the provisions of Rule 25.34 respecting disclosure of witnesses. Rule 25.45 in material part provides:

"If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule . . . the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances."

Mrs. Hoskins was a most important witness. She was present at the time the police came into the room, made the search and arrested defendant. The State, after expressing surprise, asked to voir dire the witness before making a decision as to the motion it would make. After the discussion with the court, on and off the record, the State made a motion "claiming surprise." The effect of this action was to place the responsibility of determining the proper sanction upon the trial court. The comments of court and counsel demonstrate that the court considered all of the alternatives. It appeared to the court that a voir dire by the State would not dispose of the issue. It was apparent that the witness was highly important to the defendant's cause. The court considered excluding the testimony of this witness but concluded that the sanction would not be fair to the defendant. We believe that the trial court could also consider that defendant made no objection to the granting of a mistrial. It is clear that the trial court was convinced that there was a manifest necessity "to declare a mistrial to promote the ends of public justice." It was not necessary that he make use of the quoted words because there was sufficient justification for the ruling. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717, 733 (1978). We find no abuse of discretion on the part of the trial court. The defendant was not subjected to double jeopardy as prohibited by the Constitutions of Missouri and the United States.

Defendant's final point relied on reads as follows:

"The trial court committed reversible error in overruling Appellant's Motion to Dismiss the amended information filed against Appellant because the amended information on which the State proceeded at trial was not valid in that the evidence adduced at trial demonstrated that the prosecution proceeded against Appellant

---

2. " '[N]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . ..' "

by way of indictment following his discharge at a preliminary hearing and then at the time of trial, substituted an information pleading Appellant's prior conviction. The use of either indictment or information more than once in proceedings against a defendant subjects that defendant to double jeopardy, and the trial court erred in permitting the prosecution to proceed without a preliminary hearing on a substitute information which enhanced the range of punishment and thus, acted to change the nature of the charge against which Appellant was supposed to defend without granting him a preliminary hearing on that charge."

As we read the point defendant contends that the use of the indictment followed by an information in lieu of indictment constitutes double jeopardy.

Jeopardy attaches in a jury trial when the jury is impaneled and sworn and in a court tried case. *State v. Irving*, 559 S.W.2d 301, 307 (Mo.App.1977). In a trial before a judge jeopardy attaches upon the introduction of evidence. *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). The substitution of an information for an indictment does not put a defendant to trial. While not raised we also take cognizance of the fact that the preliminary hearing does not place the accused in jeopardy. *State v. Thomas*, 529 S.W.2d 379 (Mo.1975). This issue is without merit.

The other facet of this point was not raised in the motion for new trial and is not before us for review. *State v. Gordon*, 536 S.W.2d 811 (Mo.App.1976).

In any case the nature of the charge was not changed and defendant was not entitled to another preliminary hearing. *State v. Collins*, 383 S.W.2d 747 (Mo.1964); *State v. Green*, 305 S.W.2d 863 (Mo.1957).

Finding no error the judgment is affirmed.

STEPHAN, P. J., and KELLY, J., concur.